Raymond Pearson Motor Company v. Commissioner. Raymond Pearson, Inc. v. Commissioner.
Raymond Pearson Motor Co. v. Commissioner
Docket Nos. 40686, 40688.
United States Tax Court
T.C. Memo 1955-260; 1955 Tax Ct. Memo LEXIS 77; 14 T.C.M. (CCH) 1033; T.C.M. (RIA) 55260; September 26, 1955
William O. Taylor, Esq., 300 Gulf Building, Houston, Tex., for the petitioners. M. Clifton Maxwell, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax for the fiscal year ended September 30, 1949, against the petitioners as follows: Docket
No.
Petitioner
Deficiency
40686
Raymond Pearson Motor Co.
$3,996.43
40688
Raymond Pearson, Inc.
7,239.35
The contested issue is whether the respondent erred in taxing to petitioners rather than Raymond *78 Pearson and Sons, a partnership composed of petitioners' stockholders, income arising out of certain conditional sales contracts transferred by petitioners to finance companies. Findings of Fact The facts which are stipulated are found accordingly. Raymond Pearson Motor Company and Raymond Pearson, Inc., are taxable corporations and filed their respective income tax returns for the fiscal year ended September 30, 1949, with the collector of internal revenue for the first district of Texas. Prior to 1946 Raymond Pearson, as the sole proprietor, carried on the businesses now conducted by petitioners Raymond Pearson Motor Company and Raymond Pearson, Inc. (hereinafter referred to as the petitioners). Each of the corporations involved carried on the business of selling new and used automobiles, parts and accessories, and furnished repair and related services for automobiles. At all material times the capital stock of each of the corporations was owned as follows: Raymond Pearson, 60 per cent; Raymond Pearson, Jr., 20 per cent; and Robertson Pearson, 20 per cent. Raymond Pearson, Jr., and Robertson Pearson are adult sons of Raymond Pearson. In 1939 Raymond Pearson and his two *79 sons, Raymond, Jr., and Robertson, entered into an agreement for the formation of a partnership known as "Raymond Pearson and Sons", with an original capital of $15,000 cash. Raymond Pearson and Sons will hereinafter be referred to as the partnership. The partnership was formed to engage in the business of selling Ford tractors and Ferguson implements. In 1941 the partnership discontinued its business of selling tractors and implements. Thereafter it engaged in the business of investing in mineral properties and in buying and selling war surplus goods. On January 14, 1946, petitioner Raymond Pearson Motor Company entered into a written agreement with the partnership whereby the latter agreed to buy and the petitioner agreed to sell all notes received by it representing partial payments of the purchase price of automobiles sold by it. The agreement provided in pertinent part as follows: "I. "RAYMOND PEARSON MOTOR CO. hereby agrees to sell and deliver unto RAYMOND PEARSON AND SONS all notes, papers and other evidences and the securities therefor, constituting time or term sales of automobiles which may be sold by Raymond Pearson Motor Co. "II. "RAYMOND PEARSON AND SONS hereby *80 agrees and covenants that it will purchase from RAYMOND PEARSON MOTOR CO. all such notes, paper and other evidences of indebtedness and securities therefor, constituting time or term sales of automobiles which may be sold by RAYMOND PEARSON MOTOR CO. "@III. "It is understood that RAYMOND PEARSON MOTOR CO. shall be free to make such term sales to whom and upon such term as to it or its representatives may be deemed advisable, and RAYMOND PEARSON AND SONS shall have no control over or voice in determining the character, term or maker of such notes, papers and other evidences of indebtedness, provided, nowever [however], that RAYMOND PEARSON MOTOR CO. does covenant and agree with RAYMOND PEARSON AND SONS that all of such notes, papers and other evidences of indebtedness and securities therefor shall be on forms common to and accepttable to credit institutions in general engaging in the business of financing the sale of automobiles. "IV. "It is understood and expressly stipulated that RAYMOND PEARSON AND SONS shall accept such notes, papers and other evidences of indebtedness at their face value and enter credit accordingly therefor and shall assume and be responsible for such *81 liabilities as may result from the operation of a trade or business of this character. "V. "RAYMOND PEARSON MOTOR CO. agrees that it will prepare for market and resell all automobiles repossessed by reason of default of the maker in payment of the notes or other evidences of indebtedness which may have been accepted by RAYMOND PEARSON MOTOR CO. in the sale of automobiles and sold and transferred to RAYMOND PEARSON AND SONS. It is expressly provided, however, that RAYMOND PEARSON AND SONS shall pay to RAYMOND PEARSON MOTOR CO., upon being presented with proper statements, all items of cost and expense incurred by RAYMOND PEARSON MOTOR CO. in the handling, repossessing, repairing and selling of such automobiles, including any losses which may result to RAYMOND PEARSON MOTOR CO. by reason thereof. "THIS AGREEMENT may be terminated by such party so desiring to terminate same, delivering to the other party notice of such desire to terminate ten days in advance of such termination. In the event same is not otherwise terminated, this agreement shall continue for a term of five years beginning with January 1, 1946 and concluding December 31, 1950." On January 14, 1946, petitioner *82 Raymond Pearson, Inc., entered into an identical agreement with the partnership. On January 1, 1949, the partnership and each of the corporations entered into a further written agreement whereby the latter agreed to purchase all notes received from purchasers of automobiles. Each agreement provided that each petitioner was to act as "* * * the agent of and for and on behalf of RAYMOND PEARSON & SONS, to endorse and deliver all or any part of the notes, liens and other evidences of indebtedness and the securities therefor which are or may become the subject matter of the above referred to agreement, to UNIVERSAL C.I.T. CREDIT CORPORATION, or to PACIFIC FINANCE CORPORATION, or to any other person or corporation with whom the parties hereto may choose to do business." It is a business practice of long standing among automobile dealers to dispose immediately of promissory notes received by them as part of the consideration for the automobiles sold by them. Numerous finance institutions, such as Universal C.I.T. Credit Corporation, hereinafter referred to as Universal, and Pacific Finance Corporation, hereinafter referred to as Pacific, regularly engage in the business of financing *83 such notes for the dealers. During the taxable year 1949 the majority of promissory notes received by each of the petitioners was transferred either to Universal or Pacific. Customarily, the forms used by dealers in the sale of automobiles are prepared by the finance institutions. If the transaction involves an unpaid credit balance the purchaser customarily executes a promissory note and a chattel mortgage to secure the note. Included in the principal balance of the note is an amount representing a time sales charge or interest on the unpaid part of the selling price of the automobile. Upon receipt of a note from a dealer a financing institution customarily maintains an account called "dealer's reserve". The dealer's reserve account represents a credit to the particular automobile dealer and is normally expressed in terms of a specific percentage of that part of the principal amount of the note representing the unpaid portion thereof. The percentage, which ordinarily varies from 2 per cent to 4 per cent, is determined by agreement with the particular finance company. Since the dealer's reserve is a sharing by the financing institution and the automobile dealer, such account is *84 periodically reviewed, and if the balance of such account exceeds a given percentage, then such excess is paid over to the dealer. The dealer's reserve accounts in the records of Universal were carried in the corporate name of each petitioner. Most checks in payment of the dealer's reserve income were made payable to the partnership. Occasionally such checks were made payable to one of the petitioners or to Raymond Pearson individually. The dealer's reserve accounts in the records of Pacific were carried in the name of the partnership and checks in payment of dealer's reserve income were made payable to it. Payments of dealer's reserve income by independents were made payable to either of petitioners or to Raymond Pearson individually. Any funds representing dealer's reserve income received by either of petitioners or by Raymond Pearson individually were turned over to the partnership. In the financing arrangements of each petitioner the transactions were largely guided and controlled by Raymond Pearson. In such transactions there was no identification of Raymond Pearson as an individual or as a representative of the partnership or of either of the petitioners. Copies of *85 the conditional sales contracts and the accompanying chattel mortgage notes were filed in the names of the respective petitioners. The partnership did not maintain records of such transactions but received only the amounts of the dealer's reserve income from each of the respective petitioners. During the taxable year involved the notes transferred by each of the petitioners to Universal or Pacific were of the "repurchase endorsement" type which provided that if the maker of the note defaulted and it became necessary to repossess the car, it was agreed that the dealer would purchase it from Universal or Pacific for an amount equal to the then unpaid balance of the defaulted note. Neither Universal nor C.I.T. was a party to any agreement between petitioners and the partnership whereby the latter agreed to assume liability for repossession losses. Both Universal and C.I.T. agreed orally with Raymond Pearson that they would look to the partnership although the notes bore the corporate endorsement of either of petitioners. The few transactions that were handled by independent finance institutions were normally under a so-called "WOR" or without recourse endorsement. Such notes provided *86 in substance that the particular finance company would have no recourse against the transferor-dealer except for a breach of warranty in the assignment of the note. The repossession losses and the amounts of dealer's reserve income of Raymond Pearson, as a sole proprietor, for the years 1939 through 1945 are as follows: Dealer's
Repossession
Reserve
Year
Losses
Income
1939
$1,637.12
Not available
1940
1,268.82
$31,076.07
1941
1,996.83
36,064.02
1942
(371.41)
3,903.54
1943
(216.82)
2,891.84
1944
None
1,667.76
1945
None
976.82
The repossession losses and the amounts of dealer's reserve income of both petitioners for the years 1946 to 1949, inclusive, are as follows: Dealer's
Repossession
Reserve
Year
Losses
Income
1946
None
Not available
1947 (FY ending 9/30)
None
$ 2,846.17
1948 (FY ending 9/30)
None
10,063.38
1949 (FY ending 9/30)
None
25,253.16
During the taxable year 1949 neither petitioner made any entry on its financial records with respect to the dealer's reserve income on notes received from purchasers and transferred to Universal, Pacific, or other financing institutions. The amounts *87 of such reserves were regularly reflected as income on the partnership records and were reported as such on the partnership return of income and on the individual returns of the members thereof. The statutory notice of deficiency to each petitioner for the taxable year involved contained the following language relative to the income in issue: "It has been determined that * * * income accrued on notes received from sale of automobiles which were sold to various finance companies is taxable income of the corporation. The income known as 'dealer's reserve' was included in income of Raymond Pearson and Sons, a partnership." Respondent determined that the sum of $16,375.26 was taxable income to Raymond Pearson, Inc., and that the sum of $8,877.90 was taxable income to Raymond Pearson Motor Company. The arrangements between petitioners and the partnership were not at arm's length and were a sham and device for the purpose of evading tax. The services giving rise to the dealer's reserve income were in fact performed by petitioners and not the partnership. The respondent's action is reallocating the amount of $16,375.26 to petitioner Raymond Pearson, Inc., and the amount of $8,877.90 *88 to petitioner Raymond Pearson Motor Company was reasonable. Opinion LEMIRE, Judge: The question presented is whether the respondent erred in taxing to petitioners rather than Raymond Pearson and Sons, a partnership composed of petitioners' stockholders, income arising out of certain conditional sales contracts transferred by petitioners to finance companies. The amounts of dealer's reserve income for the taxable year involved for each of the petitioners are not in dispute. Respondent contends that all of the income attributable for the taxable year involved to the dealer's reserves is taxable to each of the petitioners, respectively, because the partnership in question allegedly represented a business entity interposed into the financing arrangements between petitioners and their financing institutions for the sole purpose of diverting the dealer's reserve income from petitioners to the partnership entity. In support thereof respondent relies upon sections 22(a) and 45, Internal Revenue Code of 1939. Petitioners, on the other hand, contend that the partnership was a bona fide separate and functioning business enterprise, the income of which was separate, distinct, and taxable *89 to the individuals comprising it. It is a well-settled principle that a taxpayer is privileged to minimize his taxes and is free to adopt such organization of his affairs as he may choose. Moline Properties v. Commissioner, 319 U.S. 436; Coca-Cola Bottling Co. of Sacramento, 17 T.C. 101, and authorities collected therein. However, if the form of a business enterprise which a taxpayer adopts is a sham and a device to evade the burden of taxation, the law looks through the form to reality and disregards the selected form of the business. Higgins v. Smith, 308 U.S. 473; Gregory v. Helvering, 293 U.S. 465. We agree with the respondent that for tax purposes the partnership here involved was a mere sham and device by which the petitioners' income was diverted to the partnership. We think it clear enough that the arrangements were not at arm's length. The petitioners continued after the agreements of January 1946 and January 1949 to perform all of the business transactions incident to earning dealer's reserve income, although ostensibly acting as agent for the partnership. The partnership functioned only to receive and report the dealer's *90 reserve income from the particular financing institution with whom petitioners had dealt. Otherwise, such income would clearly have been taxed to petitioners. The contention is made by the petitioners that the partnership was interposed to hold and render the petitioners free from any losses arising out of repossessions under "repurchase endorsement" financing whereby a dealer agrees to repurchase the defaulted note of the original maker and purchaser of the automobile. The record shows that at the time of the arrangement between the partnership and the petitioners in January 1946 it was obvious from postwar conditions that there was a ready demand for automobiles and that such demand would continue for several years. Since automobiles were scarce there was no likelihood of any loss from repossessions. At the time of the January 1949 "agent" agreements the record shows that no such losses had occurred to either petitioner during the years 1946, 1947, and 1948. None occurred during 1949. Therefore, we do not agree with petitioners' contention that there was a business purpose for the arrangements between petitioners and the partnership. We think it clear from the entire record that *91 the only business activity carried on by the partnership consisted of bookkeeping entries recording the dealer's reserve. Petitioners carried on their credit financing after the agreements in question in exactly the same manner as before and with the same financing institutions Raymond Pearson had dealt with as a sole proprietor. The financing arrangements of each petitioner were largely conducted by Raymond Pearson and in such transactions there was no identification of himself as a representative of the partnership or of either petitioner. However, since the notes bore the name of the petitioner involved rather than the partnership it seems likely as a practical matter that a third party would consider Raymond Pearson as acting for petitioners rather than for the partnership, which was not directly involved. In our opinion there is no question but that all of the income here involved flowed freely from the efforts of the petitioners and their employees rather than from the partnership. See R. O. H. Hill, Inc., 9 T.C. 153, 158; Forcum-James Co., 7 T.C. 1195, remanded per stipulation, 176 Fed. (2d) 311. We have found as a fact that the services *92 incident to the determining of the dealer's reserve income were performed by the respective petitioners and we hold that the amounts received constitute taxable income to petitioners under section 22(a), Internal Revenue Code of 1939. The respondent adjusted the corporate income of petitioner Raymond Pearson, Inc., by the amount of $16,375.26 and the corporate income of Raymond Pearson Motor Company by the amount of $8,877.90 as representing the dealer's reserve income reported by the partnership. Such determination was made pursuant to section 45 of the Internal Revenue Code of 1939, in order to prevent evasion of taxes and in order to clearly reflect income. Since petitioners have not shown that the respondent's determination was unreasonable, arbitrary, or capricious, we hold that such determination was proper. Grenada Industries, Inc., 17 T.C. 231, affd. 202 Fed. (2d) 873, certiorari denied 346 U.S. 819; Advance Machinery Exchange, Inc., 196 Fed. (2d) 1006, certiorari denied 344 U.S. 835. Decisions will be entered for the respondent.